IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMERICA BANK, a Texas Banking Association, | ) ) ) |
| Plaintiff, | ) Case No. 10 C 1930 ) |
| v. | ) Magistrate Judge Sidney I. Schenkier ) |
| FGMK, LLC, an Illinois Limited Liability Company, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER[1]

The plaintiff, Comerica Bank ("Comerica"), seeks to hold defendant, FGMK, LLC ("FGMK"), an accounting firm, liable for negligence and negligent misrepresentation in connection with various audits that FGMK performed for Sysix Technology, LLC ("Sysix"), a computer and information technology reseller which borrowed money from Comerica. This memorandum opinion and order addresses Comerica's motion to strike affirmative defenses 2, 3 and 4 asserted by FGMK (doc. # 68). For the reasons set forth below, the Court denies the motion to strike without prejudice.

I.

We begin with a brief summary of the facts alleged in the complaint and answer. Comerica filed a two-count complaint against FGMK on March 26, 2010 (doc. # 1), alleging negligence and negligent misrepresentation "arising out of the performance of professional accounting services by FGMK relating to audits of the financial statements of Sysix from 2001 through 2008" (Compl. ¶ 1). Comerica alleges that FGMK was "aware that a primary intent of Sysix in engaging [FGMK]

---

[1] On August 24, 2010, by joint consent of all the parties, and pursuant to 28 U.S.C. § 636(c), this case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. ## 54, 58).

to perform these audits was to benefit and influence [Comerica] in connection with the extension of credit to Sysix" (Compl. ¶ 1; *see also* ¶¶ 11-12, 48, 53-54).

On January 1, 2001, Comerica entered into its first loan agreement with Sysix, promising to issue credit to finance its operations (Compl. ¶ 6). This loan agreement was amended each year from 2001 through 2008 (*Id.*, ¶ 9). To satisfy its obligations under the loan agreement, Sysix engaged FGMK to audit the opening balance sheet required by the loan agreement and to perform audits of Sysix's financial statements and those of its subsidiary for every fiscal year between December 31, 2001 and December 31, 2008 (*Id.*, ¶ 10).

Comerica alleges that the financial statements certified by FGMK in each year of the loan agreement caused it to believe that Sysix's assets were more than sufficient to satisfy Sysix's obligations under the agreement (Compl. ¶ 18). However, Comerica alleges that Sysix's assets were grossly overstated because of a fraud perpetrated by Sysix's principal owner and president, John Sheaffer (*Id.*, ¶ 19). Sysix ceased operations in July 2009 after Mr. Sheaffer committed suicide, leaving a letter related to the alleged fraud (*Id.*, ¶ 24).

Comerica alleges that FGMK was required to conduct its audits in accordance to generally accepted auditing standards, and that FGMK represented that it had done so (Compl. ¶ 26). Comerica alleges that FGMK owed it a duty of care to meet the standards of professional care in preparing audits and to provide Comerica with accurate information about Sysix's finances (*Id.*, ¶¶ 39, 48, 53), and that FGMK breached that duty (*Id.*, ¶ 49). Comerica further alleges that it relied on these audits and statements (*Id.*, ¶ 55), which provided the basis for the issuance of credit to Sysix between 2001 and 2008 (*Id.*, ¶¶ 26, 45).

2

Comerica alleges that is suffered damages as a result of FGMK's conduct (Compl. ¶¶ 46, 50, 57). Based on these allegations, *inter alia*, Comerica asserts claims against FGMK for negligence and negligent misrepresentation (*Id.*, ¶¶ 47-57).

In its amended answer (doc. # 63), FGMK admits that Comerica and Sysix entered into a loan agreement on January 1, 2001 that was amended each year through 2008; and, FGMK admits that it performed the audits, as required by the loan agreements (Answer ¶¶ 6, 9, 10). FGMK also admits that Sysix ceased operations in July 2009 following the death of Mr. Sheaffer; that Mr. Sheaffer committed suicide; and that Mr. Sheaffer left a letter related to his conduct at Sysix (*Id.*, ¶ 24). However, FGMK denies the allegations of negligence and negligent misrepresentation (*Id.*, ¶¶ 33-57). In particular, FGMK denies all allegations that it was aware that a primary intent of Sysix was to use the audit reports to benefit Comerica or to influence it in deciding to extend credit to Sysix (*Id.*, ¶¶ 1, 11-12, 48, 53-55), or that FGMK owed any duty to Comerica (*Id.*, ¶¶ 39, 48, 53).

FGMK also has asserted ten affirmative defenses (Answer, at 21-23). Three of those defenses are the subject of the current motion to strike:

**Second Affirmative Defense:**
**Comparative Negligence.**
This Defendant asserts that the damages alleged in Counts I and II of the Complaint were a direct and proximate cause of the conduct attributable to the Plaintiff in failing to adequately monitor and administer its loan to Sysix. Therefore, if the Defendant is found liable to the Plaintiff in the trial of this cause, said monetary award should be reduce in an amount commensurate with the Plaintiff's comparative fault pursuant to § 2-1116 of the Illinois Code of Civil Procedure and § 30.2 of the Illinois Public Accounting Act. 735 ILCS 5/2-1116, 225 ILCS 450/30.2 (West 2010).

**Third Affirmative Defense:**
**Contributory Fault.**
This Defendant asserts that the conduct attributable to the Plaintiff in failing to adequately monitor and administer its loan to Sysix constitutes contributory fault,

which is greater than 50% of the proximate cause of the injuries and damages alleged in Counts I and II and, therefore, the Plaintiff should be barred from recovering any damages at the trial of this case pursuant to § 2-1116 of the Illinois Code of Civil Procedure and § 30.2 of the Illinois Public Accounting Act. 735 ILCS 5/2-1116, 225 ILCS 450/30.2 (West 2010).

**Fourth Affirmative Defense:**
**Several Liability.**

This Defendant denies liability but asserts its fault, if any, for the injuries and damages alleged in Counts I and II, is less than 25% of the total fault attributable to the Plaintiff in failing to adequately monitor and administer its loan to Sysix, and to any Third-Party Defendants who could have been sued by the Plaintiff. Therefore, this Defendant shall only be severally liable for the Plaintiff's damages, if any, which may be awarded by a trier of fact, pursuant to § 2-1117 of the Illinois Code of Civil Procedure and § 30.2 of the Illinois Public Accounting Act. 735 ILCS 5/2–1117, 225 ILCS 450/30.2 (West 2010).

## II.

At the threshold, FGMK argues that we should reject the motion to strike as untimely (Def.'s Resp. at 3-4). FGMK filed amended affirmative defenses on September 24, 2010. Since no responsive pleading is required to an affirmative defense, Comerica had a period of 21 days – until October 15, 2010 – in which to move to strike affirmative defenses. *See* Federal Rule of Civil Procedure 12(f)(2). Comerica did not file its motion to strike until November 5, 2010.

Comerica offers no explanation for its delay in filing the motion to strike. Rather, Comerica asks the Court to exercise its "unrestricted authority . . . to strike insufficient defenses" (Pl.'s Reply at 1) (quoting *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 n.3 (7th Cir. 1975)). We agree that Rule 12(f) does give us broad authority to strike defective affirmative defenses; indeed, a court may strike insufficient defenses on its own initiative, even without a motion. *See* Federal Rule of Civil Procedure 12(f)(1). As a result, courts within this district have held that trial courts have the "authority to consider plaintiff's motion [to strike] even though it was not made within the

4

time limits." *Go-Tane Serv. Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200, 201-02 n.2 (N.D. Ill. 1981).

In this case, FGMK identifies no prejudice it allegedly has suffered because Comerica filed the motion to strike within 42 days instead of within 21 days of the amended answer. We therefore exercise our authority to consider the motion to strike.

### III.

Rule 12(f) gives a court the authority to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Seventh Circuit uses a three-part test to determine whether an affirmative defense should be stricken : (1) the matter must be properly pled as an affirmative defense; (2) the matter must be adequately pled under the requirements of Rules 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Although motions to strike are disfavored when used as a dilatory tactic, where "motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Id.* at 1295

That said, affirmative defenses should be stricken "only when they are insufficient on the face of the pleadings. *Heller*, 883 F.2d at 1294. "Ordinarily, defenses will not be struck if . . . they present questions of law or fact. *Id.*; *see also AEL Financial LLC v. City Auto Parts of Durham, Inc.*, No. 08 C 3490, 2009 WL 2778078, * 9 (N.D. Ill. Aug. 31, 2009) ("[I]t would be inappropriate to strike an affirmative defense where the issues are complex"). With these principles in mind, we address the motion to strike.

5

## A.

Comerica seeks to strike FGMK's affirmative defenses 2-4 on ground that they are legally insufficient (Comerica Br. at 4). Comerica argues that these defenses are legally insufficient because they plead theories of comparative negligence, contributory fault and several liability that are barred under the "audit interference doctrine" (*Id.* at 4, 6-8).

"The audit interference doctrine clearly has a foundation in Illinois common law." *Board of Trustees v. Coopers & Lybrand,* 803 N.E.2d 460, 466 (Ill. 2003). The doctrine provides that "the negligence of an employer who hires an accountant to audit the business is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth." *Coopers & Lybrand,* 803 N.E.2d at 464-65 (citing *National Surety Corp. v. Lybrand,* 256 A.D. 226, 235, 9 N.Y.S.2d 554, 563 (1939)). Under the audit interference doctrine, "not all contributory fault of a plaintiff that is a proximate cause of an economic loss could be asserted as a defense. Instead, only contributory fault that affect[s] or interfere[s] with the audit could be considered." *Coopers & Lybrand,* 803 N.E.2d at 466; *see also Cereal Byproducts Co. v. Hall*, 132 N.E.2d 27, 29-30 (Ill. App. 1956) (contributory negligence cannot be asserted by the auditor when there was no evidence that the client interfered with the audit).

In *Coopers & Lybrand,* the Illinois Supreme Court considered whether this common law doctrine has been abrogated by legislation that made comparative negligence applicable in tort actions against accountants under the Public Accounting Act, 225 ILCS 450/30.2. The Supreme Court held that the audit interference doctrine survived this legislation. *Coopers & Lybrand,* 803 N.E.2d at 466. After surveying precedent from other jurisdictions, the Supreme Court rejected the argument that the doctrine is inconsistent with principles of comparative fault. To the contrary, the

Supreme Court held that "application of the audit interference doctrine in the accounting malpractice context is in accord with recognized principles of comparative fault." *Id.* at 468.

The Supreme Court also rejected that argument that, by "relieving the client from responsibility for negligence not directly affecting the audit itself," the doctrine disserves public policy because it "minimizes the client's duty of care and encourages clients to take unjustified risks despite their superior knowledge of those risks." *Coopers & Lybrand*, 803 N.E.2d at 468. The Supreme Court explained that, on the one hand, there are other incentives and deterrents available to keep that kind of risk taking in check, while on the other hand, "the audit interference doctrine gives the auditor incentive to exercise more skepticism of the client's statements, resulting in greater care by the client." *Id.*

In the affirmative defenses at issue here, FGMK asserts that Comerica's negligent conduct was its failure to "adequately monitor and administer its loan to Sysix" (Answer, at 21). This kind of general allegation of negligence is not enough to plead the narrow category of comparative negligence that is permitted under the audit interference doctrine. FGMK's affirmative defenses do not allege how Comerica's alleged negligence interfered with FGMK's ability to do the audit, as is required under the audit interference doctrine. FGMK's affirmative defenses assert nothing more than Comerica's alleged "poor business practices [, which] cannot be asserted as a defense to the auditor's negligent failure to discover and report the client's noncompliance" with various legal requirements. *Coopers & Lybrand*, 803 N.E.2d at 468.

So, there is no doubt both that the audit interference doctrine is alive and well in Illinois, and that if the doctrine applies here, FGMK's affirmative defenses 2-4 does not plead enough to survive the motion to strike. But, as we explain below, factual and legal questions concerning the

applicability of the doctrine in this case make it premature for us to decide at this time whether the doctrine applies in this case, and if so, whether Comerica may successfully invoke it.

### B.

*Coopers & Lybrand* discussed the audit interference doctrine in the context of a dispute between the auditor and the auditor's client. In this case, however, we are not presented with a claim by Sysix (the client) against the auditor (FGMK), but instead with a claim against the auditor by a third party (Comerica), which had no contractual relationship with FGMK. Neither *Coopers & Lybrand* nor other Illinois decisions address the applicability of the doctrine beyond the auditor-client context. Not surprisingly, Comerica and FGMK disagree about the doctrine's reach.

Comerica argues that the doctrine should not be limited to the accountant-client relationship. Comerica claims that the *Coopers & Lybrand* court signaled its willingness to extend the doctrine to suits against accountants by third parties by its citation to two cases which Comerica says did just that (Pl. Reply at 3-4). *See Fullmer v. Wohlfeiler & Beck*, 905 F.2d 1394 (10th Cir. 1990); *Stroud v. Arthur Anderson & Co.*, 37 P.3d 783 (Okla. 2001). Comerica says that application of the doctrine is appropriate here because FGMK knew that the primary intent of Sysix in having FGMK prepare the audits was to influence Comerica, and thus under the Illinois Public Accounting Act FGMK had a duty to Comerica that was equal to FGMK's duty to its client, Sysix (*Id.* at 2). Finally, Comerica argues that because FGMK does not allege in its pleading that Comerica interfered in any way with the audit that the policy underlying the doctrine favors extending it to claims by third parties against auditors (*Id.* at 6-8).

For its part, FGMK argues that the audit interference doctrine should not apply outside the auditor-client relationship. FGMK contends that the *Coopers & Lybrand* citation to *Fullmer* was

8

not an implicit endorsement of expanding the reach of the doctrine (Def.'s Resp. at 10-13). FGMK also argues that application of the audit interference doctrine to non-clients would be contrary to the policy underlying the rule (*Id.*. at 7-10). FGMK further points out that it has denied Comerica's claim that FGMK owed it a duty (*Id.* at 3).

As is clear, the Illinois Supreme Court has not yet considered the question of whether the audit interference doctrine applies in suits brought against auditors by third parties, and not by the audit client. As a result, to decide whether the doctrine applies in this case, we would have to predict how the Illinois Supreme Court would resolve that question. *Baltzell v. R&R Trucking Co.*, 554 F.3d 1124 (7th Cir. 2009); *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir. 1986). In doing so, we would lack guidance from any intermediate Illinois appellate decisions, as the issue has not been presented or resolved at that level – all of the decisions the parties have mustered on the issue come from outside Illinois, and we do not find them particularly illuminating.

Moreover, we must disagree with the weight that Comerica places on the citation in *Coopers & Lybrand* to the *Fullmer* and *Stroud* decisions. Neither of those decisions discusses whether the audit interference doctrine should apply beyond to claims outside the auditor-client relationship. In *Fullmer*, the defendants had performed an audit for Giftmakers. The plaintiffs who brought suit were three individuals who were shareholders and investors in Giftmakers. While the decision affirmed the application of the audit interference doctrine in the case, the court did not explain whether it treated the plaintiffs as part of the auditor-client relationship because of their ownership interest in it. Similarly, in *Stroud*, the defendant had done audit work for two entities (SCI and ICOP), both of which were owned by Steve Stroud. The plaintiffs who brought suit were SCI and

Mr. Stroud. Again, while the court applied the audit interference doctrine, the court did not explain whether it did so because of Stroud's ownership and unity of interest with SCI or, instead, found that the doctrine applied to suits by third-parties against auditors. In these circumstances, the citation to these decisions by the *Coopers & Lybrand* court sheds no light on whether the Illinois Supreme Court would extend the doctrine outside the auditor-client setting.

This absence of guidance would not deter us from deciding the issue at this time if it were necessary to do so. But, we deem it premature to reach the issue for now.

A linchpin to Comerica's argument is the proposition that the doctrine should apply here because, under the Illinois Public Accounting Act, FGMK "owed the same duties to Comerica that it owed to Sysix" (Pl."s Reply at 2). Under the Act, an auditor may be responsible in tort to someone with whom there is no privity of contract, if the auditor is "aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action." 225 ILCS 450/30.1(2). The Seventh Circuit has recognized that under Illinois law, this establishes a "duty owed by a professional accountant to non-client third-parties." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 837 (7th Cir. 2007).

Comerica has squarely alleged that FGMK had the knowledge required to create a duty to Comerica. But, FGMK has just as squarely denied those allegations. We cannot grant a motion to strike on the assumption that these disputed allegations will be resolved in Comerica's favor.

Until this factual dispute is fleshed through discovery, we see no good reason to hold forth on the application of the audit interference doctrine here. The resolution of this fact dispute will better inform the Court's consideration of the competing policy arguments that may be relevant in deciding whether the Illinois Supreme Court would extend the audit interference doctrine to suits

brought by parties outside the auditor-client relationship. As Comerica points out (Pl.'s Reply at 2), and as the United States Supreme Court has observed in another setting, *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001), context matters.[2]

## CONCLUSION

For the reasons stated above, the Court denies Comerica's motion to strike FGMK's Affirmative Defenses 2, 3 and 4 (doc. # 68).

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: January 11, 2011**

---

[2] FGMK asserts that even if the doctrine were held applicable, discovery will establish conduct by Comerica that affected FGMK's ability to conduct the audits, and thus will support the affirmative defenses even as narrowed by the audit interference doctrine (Def.'s Br. at 13-14). Indeed, FGMK says it could make those allegations now (*id.* at 15), while Comerica speculates that FGMK cannot do so in a manner consistent with Federal Rule of Civil Procedure 11 (Pl.'s Reply at 8). We do not enter into this debate, but again will await for the full development of the evidence through discovery.